UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE SPECTRUM CAPITAL GROUP, LLC<br><br>Plaintiff,<br><br>v.<br><br>LUCOR, INC.<br><br>Defendant. | C.A. No.: 07-075 ML |

**DEFENDANT LUCOR, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

Now comes Defendant, Lucor, Inc. ("Lucor"), by and through its undersigned counsel, and moves this Honorable Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), to dismiss the Complaint because the Court lacks personal jurisdiction over Lucor or, in the alternative, to transfer this action to the United States District Court for the Eastern District of North Carolina. This motion is made and based upon the Memorandum of Law and affidavits submitted herewith, the Complaint, and any oral argument this Court deems proper. Lucor does not request oral argument or an evidentiary hearing on this matter, but counsel would be pleased to appear for any proceeding the Court believes would be helpful.

WHEREFORE, Lucor respectfully moves this Court to enter an Order dismissing the Complaint for lack of personal jurisdiction over Lucor or, in the alternative, an Order transferring this action to the United States District Court for the Eastern District of North Carolina.

LUCOR, INC.,

By Its Attorneys,

/s/ Charles S. Beal

Charles S. Beal (#5559)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
401-331-5700
401-331-5787 (fax)

Date: April 9, 2007

OF COUNSEL:

Denise Smith Cline, N.C. State Bar No. 10837
S. Montaye Sigmon, N.C. State Bar No. 32827
SMITH MOORE LLP
2800 Two Hannover Square (Zip 27601)
Post Office Box 27525
Raleigh, North Carolina 27611
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

CERTIFICATION

The undersigned hereby certifies that on the 9th day of April, 2007, a copy of the foregoing was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Heather A. Pierce (#7345)
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903
401-274-9200
401-276-6611 (fax)

Steven M. Cowley
Edwards Angell Palmer & dodge, LLP
111 Huntington Avenue
Boston, MA 02199-7613
617-239-0100
617-227-4420 (fax)

/s/ Charles S. Beal

G:\csb\Lucor\RALEIGH-#330618-v1-Lucor__Motion_to_Dismiss.DOC

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE SPECTRUM CAPITAL GROUP, LLC<br><br>Plaintiff,<br><br>v.<br><br>LUCOR, INC.<br><br>Defendant. | C.A. No.: 07-075 ML |

**MEMORANDUM IN SUPPORT OF DEFENDANT LUCOR, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

Defendant, Lucor, Inc. ("Lucor"), by and through its undersigned counsel, respectfully submits this Memorandum in Support of its Motion to Dismiss or, in the Alternative, to Transfer, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and Local Civil Rule 7.

**NATURE OF THE MATTER BEFORE THE COURT**

Lucor moves to dismiss the Complaint on the grounds that the Court lacks personal jurisdiction over it and that Rhode Island is not the proper venue for this action. In the alternative, Lucor moves to transfer the action pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) to the Eastern District of North Carolina on the grounds that proper venue does not lie in Rhode Island and on the doctrine of *forum non conveniens*.

Lucor is a Florida corporation with its principal place of business in Raleigh, North Carolina. Plaintiff, The Spectrum Capital Group, LLC ("Spectrum"), is a Delaware limited liability company with its principal place of business presently in Rhode Island. On August 1, 2004, Defendant Lucor entered into an Agreement with Spectrum pursuant to which Spectrum was to provide certain financial services related to the restructuring of Lucor's indebtedness

serviced by GMAC Commercial Mortgage ("GMAC"). At the time the Agreement was negotiated and executed, Lucor understood Spectrum's principal place of business was in New Mexico. Shortly thereafter, Spectrum moved its principal place of business to Rhode Island.

Lucor's contacts with Rhode Island have been limited to communications with employees, agents, or representatives of Spectrum—no Lucor officer, agent, or employee has ever traveled to Rhode Island to conduct business, receive services or advice, or otherwise interact with Spectrum. The services provided pursuant to the Agreement were directed to Lucor at its principal place of business in Raleigh, North Carolina. Indeed, Spectrum or its employees were required to travel to North Carolina or Georgia to perform services for Lucor. All of Lucor's documents related to the facts underlying this action and employees, agents or representatives with knowledge of them are located in North Carolina. Other relevant witnesses and documents are believed to be located in Atlanta, Georgia, where GMAC has its offices.

Based on its lack of contacts with Rhode Island and on the presence of witnesses and documents located outside Rhode Island, Lucor moves to dismiss this matter for lack of personal jurisdiction and improper venue. In the alternative, Lucor moves to transfer this action to the Eastern District of North Carolina because its principal place of business, its relevant documents, and its employees, representatives, and agents are all located in or near Raleigh, North Carolina.

## STATEMENT OF FACTS

### I. Facts Alleged in the Complaint

Plaintiff The Spectrum Capital Group, LLC ("Spectrum") alleges that Lucor breached a contract between the two parties. (Compl. ¶ 1.) Lucor is a Florida corporation with its principal place of business in North Carolina. (Compl. ¶ 3; *see also* Davis Aff. ¶ 5.) Spectrum is incorporated in Delaware. (Compl. ¶ 2.) Spectrum alleges that venue is proper "based on the

fact that a substantial part of the events giving rise to this action occurred in this District" (Compl. ¶ 5), but offers no specific factual support of that general allegation.

## II. Facts Proffered by Defendant Lucor

At the time of formation of the Agreement, neither Lucor nor Spectrum was authorized to do business in Rhode Island. (*See* Davis Aff. ¶ 5; Conway Aff. ¶ 6.) At all relevant times, Lucor was and is a Florida corporation with its principal place of business in North Carolina. (Davis Aff. ¶ 5.) Lucor, through its various operating subsidiaries, is a franchisee of Jiffy Lube International, Inc. and operates 186 Jiffy Lube stores in several states. (*Id.* at ¶ 6.) Lucor does not, however, own, operate, or otherwise have any connection with any Jiffy Lube store locations in Rhode Island. (*Id.*) Moreover, Lucor does not have any agents, officers, or employees located in Rhode Island. (*Id.* at ¶ 7.) Lucor is not registered to do business in Rhode Island and does not file any reports with any Rhode Island governmental agency. (*Id.*) Lucor does not maintain a Rhode Island office or telephone number, does not advertise or solicit business in Rhode Island, and does not provide any services in Rhode Island. (*Id.* at ¶ 8.)

In June 2004, Lucor learned of Michael G. Lederman ("Lederman"), Managing Principal of Spectrum, from a business contact in Raleigh, North Carolina. (Conway Aff. ¶ 5.) After an initial inquiry from Lucor, Mr. Lederman, on behalf of Spectrum, contacted Lucor to solicit Lucor's business related to certain financial services regarding restructuring Lucor's debt. (*Id.*) These initial calls were between Lucor in North Carolina and Mr. Lederman who, upon information and belief, was in New Mexico. (*See* Conway Aff. ¶ 6.) Mr. Lederman subsequently traveled to Raleigh, North Carolina to meet with Lucor and to secure its business. (*Id.*) In addition and in connection with negotiations leading to the execution of the Agreement,

Mr. Lederman sent an engagement letter to Lucor's offices in Raleigh, North Carolina. (Davis. Aff. ¶ 9; Conway Aff. ¶ 7.)

Lucor entered into the Agreement with Spectrum on or about August 1, 2004 when both parties signed the Agreement in Lucor's offices in Raleigh. (Davis Aff. ¶ 10; Conway Aff. ¶ 8.) Lucor contracted with Spectrum for Spectrum to provide investment banking and financial advice in connection with the restructuring of certain debt services by GMAC Commercial Mortgage. (*Id.*) These services were to be provided and directed to Lucor at its principal business location in Raleigh, North Carolina. (*Id.*)

Spectrum had its principal place of business in New Mexico at the time Lucor first learned about Mr. Lederman through and until the time that Lucor entered into the Agreement with Spectrum. (Conway Aff. ¶ 6.) Indeed, upon information and belief, Spectrum did not register to conduct business in Rhode Island until August 3, 2004 -- two days *after* the Agreement had been negotiated and executed. (*Id.*) Furthermore, during the negotiation of the Agreement, the only communications that Lucor had with Spectrum were either with individuals believed to be located in its New Mexico office, via cell phone, or in meetings held in Raleigh, North Carolina. (*Id.*)

In connection with the Agreement, no Lucor officer, agent, or employee ever traveled to Rhode Island to conduct business, receive services or advice, or otherwise interact with Spectrum. (Davis Aff. ¶ 11; Conway Aff. ¶ 10.) Instead, Spectrum or its employees were required to travel to North Carolina or Georgia to perform services for Lucor. (*Id.*) Mr. Lederman voluntarily made numerous trips to North Carolina in connection with the Agreement, and his travel to North Carolina was an understood and expected part of Spectrum's

performance. (Conway Aff. ¶ 11.) All but one meeting[1] related to the Agreement or the services provided under the Agreement took place in either Raleigh, North Carolina or Atlanta, Georgia. (Davis Aff. ¶ 12; Conway Aff. ¶ 11.) Most communications directed to Spectrum in Rhode Island were at the request of or initiated by Mr. Lederman or other Spectrum employees, agents or representatives. (Davis Aff. ¶ 13; Conway Aff. ¶ 12.)

In addition, the Agreement expressly provides that it is to be construed in accordance with and governed by North Carolina, not Rhode Island, law. (Davis Aff. ¶ 14; Conway Aff. ¶ 9.) This provision was included in the Agreement at the express request and requirement of Lucor. (Conway Aff. ¶ 9.) At no time did Lucor intend to avail itself of the privileges, benefits, and protections of Rhode Island law. (*Id.*) In short, Lucor neither purposefully made or initiated any connection or contact with Rhode Island, nor engaged in activities that led its officers or representatives to conclude that it would be subject to jurisdiction there. (Davis Aff. ¶ 15; Conway Aff. ¶ 13.) None of Lucor's communications with Mr. Lederman or other Spectrum employees were directed towards Lucor conducting business in Rhode Island, but instead related to Spectrum's provision of services to Lucor in North Carolina and Georgia. (*Id.*) Indeed, it is the nature of Spectrum's business to provide its financial advising and consulting services to its clients at their respective places of business.

Further, all of Lucor's records relating to the Agreement are maintained in Raleigh, North Carolina. (Conway Aff. ¶ 14.) All Lucor employees, agents, and representatives who were involved in the negotiation, execution or performance of the Agreement are located in or near Raleigh, North Carolina. (*Id.*) It would be inconvenient for Lucor to transport all its records and witnesses to Rhode Island. (*Id.*) Upon information and belief, GMAC's employees, agents, and representatives, who were involved in the restructuring of Lucor's indebtedness, are located

[1] One meeting took place in Texas where Shell Oil Products U.S. is located. (Conway Aff. ¶ 11.)

in or near Atlanta, Georgia. (Conway Aff. ¶ 15.) Upon information and belief, none of GMAC's employees, agents, and representatives, traveled to Rhode Island in connection with the restructuring of Lucor's indebtedness. (*Id.*) With respect to Spectrum's potential employee-witnesses, Lucor only negotiated with and did business with Mr. Lederman, or in a limited capacity, Mr. Joe Sands of Spectrum. (Conway Aff. ¶ 16.) It would be a greater inconvenience for Lucor's numerous witnesses and, upon information and belief, GMAC's witnesses to be required to travel to Rhode Island, perhaps repeatedly, than for Mr. Lederman and GMAC's witnesses to travel to Raleigh, North Carolina, a location to which Mr. Lederman has already voluntarily traveled on a number of occasions in connection with both the events underlying this action and other business. (Conway Aff. ¶ 17.)

## ARGUMENT

### I. This Court Should Dismiss This Action Because It Lacks Personal Jurisdiction Over Defendant Lucor.

Personal jurisdiction refers to the power that a court has over a defendant. *See Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 143 (1st Cir. 1995); *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d 316, 319 (D.R.I. 1998). Personal jurisdiction may be either general or specific. *Pritzker v. Yari*, 42 F.3d 53, 59 (1994). For a federal court to properly exercise personal jurisdiction over a defendant, the exercise of jurisdiction must: (1) fall within the forum state's long-arm statute; and (2) comport with the due process clause of the Fourteenth Amendment of the United States Constitution. *See Microfibres*, 20 F. Supp. 2d at 320 (quoting *Levinger*, 676 F. Supp. at 439). Here, it is only necessary to perform an analysis under the second criterion because Rhode Island's long-arm statute reaches to the full extent of the Fourteenth Amendment. *See Levinger*, 676 F. Supp. at 439 (quoting *Connecticut v. ITT Aetna Finance Co.*, 105 R.I. 397, 252 A.2d 184, 186 (R.I. 1969)).

A plaintiff bears the burden of "showing that jurisdiction exists." *Boit v. Gar-Tec Prods.*, 967 F.2d 671, 675 (1st Cir. 1992). The First Circuit has recognized that district courts have flexibility in determining the level of evidentiary scrutiny to apply, depending on the facts and circumstances of a case. Under the conventional prima facie standard,[2] courts "draw facts from the pleadings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1994). Spectrum has not made a prima facie case in its pleadings with its sole, unsupported generalization that "a substantial part of the events giving rise to this action occurred in this District." (Compl. ¶ 5.) A plaintiff cannot "rely on unsupported allegations in [its] pleadings to make a prima facie showing of personal jurisdiction." *Boit*, 967 F.2d at 675. Rather, the prima facie case must be made on "*specific facts* set forth in the record." *Id.* (emphasis added). Here, Spectrum cannot carry its burden of showing that the Court has personal jurisdiction over Lucor for the reasons discussed below.

### A. The Court Lacks General Jurisdiction Over Lucor.

General jurisdiction arises when a plaintiff's claims are "not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. *Foster-Miller*, 46 F.3d at 144. Here, Spectrum cannot make even a prima facie showing that Lucor is subject to general jurisdiction in Rhode Island.

[2] Although Lucor does not believe this to be such a case, in "closer, harder-to-call cases, particularly those that feature conflicting versions of the facts," courts may opt to apply other standards that require weighing evidence ad finding facts. *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1995); *see also Boit*, 967 F.2d at 676-78 (discussing possible standards).

It is evident from both the Complaint and the affidavits of Mr. Davis and Mr. Conway that Lucor does not have continuous and systematic contacts with Rhode Island. Lucor is a Florida corporation with its principal place of business in North Carolina. Lucor does not operate any stores in Rhode Island, nor does it have any offices or employees located here. Moreover, Lucor does not advertise in Rhode Island, nor does it solicit business in Rhode Island in any manner. As set out in the accompanying affidavits, no employees, agents, or offices of Lucor have traveled to Rhode Island in connection with the negotiation of or execution of the Agreement. Indeed, Lucor's only contact with Rhode Island has been sending occasional correspondence into Rhode Island or communicating with Spectrum's principal, Mr. Lederman, via telephone or e-mail. These contacts are neither systematic nor continuous and were occasioned by Spectrum's unilateral post-execution decision to move its principal place of business to Rhode Island. Accordingly, this Court lacks general jurisdiction over Lucor.

**B. The Court Lacks Specific Jurisdiction Over Lucor.**

The First Circuit has developed a three-part analysis to determine whether specific personal jurisdiction exists:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Pritzker*, 42 F.3d at 60-61. Each prong of the test is considered seriatum.

1. Spectrum's Claims Do Not Arise Out of or Relate to Lucor's Limited Contacts with Rhode Island.

As the First Circuit has recognized, the "relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather the action must directly arise out of the specific contacts between the defendants and the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (reasoning that it would be illogical to conclude that certain isolated instances of transmitting information into the forum state "constituted the negligent conduct that caused the Florida injury"). For contract claims, the inquiry is "whether the defendant's forum-based activities are 'instrumental in the *formation* of the contract.'" *Massachusetts School of Law at Andover, Inc. v. Amer. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998) (quoting *Hahn v. Vermont Law School*, 698 F.2d 48, 51 (1st Cir. 1983) (emphasis added)).

For example, in *Killion v. Commonwealth Yachts*, 421 F. Supp. 2d 246 (D. Mass. 2006), the district court considered whether plaintiff, a Massachusetts resident, could satisfy the relatedness requirement for his claim that he purchased a defective boat. The court concluded that plaintiff could not show any forum-related contacts as to the defendant boat manufacturer where the plaintiff had traveled to a boat show in another state and met with the defendant boat manufacturer there. *Id.* at 249-50. In short, simply meeting with and negotiating with a resident of the forum state outside that state are not contacts related to the forum state.

The facts here create an even more compelling case than those in *Killion*. Like the *Killion* defendant, Lucor had no forum-based activities that were instrumental in the formation of the Agreement at issue. Lucor met with Spectrum principal, Mr. Lederman, only at its offices in Raleigh, North Carolina. Indeed, at the time the Agreement was negotiated and formed, Spectrum's principal place of business was in New Mexico, not Rhode Island. It was only *after*

the formation of the Agreement that Spectrum formally changed its principal place of business to Rhode Island by registering with the Secretary of State. Lucor had no reason to believe that it would eventually be haled into court in Rhode Island at the time of contracting. The actual moment of formation occurred when Mr. Lederman of Spectrum and Mr. Conway of Lucor signed the Agreement at Lucor's Raleigh office.

There is simply no factual basis for the Court to assert personal jurisdiction over Lucor because there is a complete lack of forum-based contacts instrumental to the formation of the Agreement. Furthermore, the logical extension of allowing personal jurisdiction here is to permit either party to a contract to shift, perhaps numerous times, the jurisdiction in which disputes may be adjudicated simply by moving to different forums. This outcome makes clear the wisdom of the rule that the personal jurisdiction analysis for contract-based claims is based on the reasonable anticipation of the parties at the time of the formation of the contract. Spectrum cannot establish that its claims, which are based solely in contract, arise out of or relate to Lucor's contacts with Rhode Island.

2. <u>Lucor Has Not Purposefully Availed Itself of Conducting Business Activities in Rhode Island</u>.

The First Circuit has recognized that "[t]he functions of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Sawtelle*, 70 F.3d at 1391 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Thus, the court considers "whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 329 (1980)). To conduct this analysis, the First Circuit examines the voluntariness of

defendant's conduct and the foreseeability that the forum state's courts will exercise personal jurisdiction over it. *Id.*

a. *Lucor did not voluntarily avail itself of the privilege of conducting business in Rhode Island.*

At no time did Lucor knowingly and purposely direct its actions toward the forum state. At the time of formation, Lucor entered into a contract with a Delaware corporation that was based in New Mexico. The Agreement at issue selected North Carolina law as the governing law. After Spectrum moved its principal place of business to Rhode Island, Lucor continued to communicate with Mr. Lederman wherever he was. Spectrum's business location was irrelevant to the performance of the contract because the nature of its business is to provide services and advice to its clients wherever those clients are located. Indeed, the services to be performed pursuant to the contract were to be directed toward Lucor at its principal place of business in North Carolina. Mr. Lederman's physical presence was required at meetings in Raleigh, North Carolina and Atlanta, Georgia. Lucor's employees, agents, and representatives never traveled to Rhode Island in connection with the negotiation, formation, or performance of the Agreement. Lucor simply cannot be characterized as having affirmatively promoted any business in Rhode Island.

These facts are similar to those in *Sawtelle*, where the First Circuit considered whether defendants' attorney-client relationship with New Hampshire residents constituted purposeful availment such that the defendants were subject to personal jurisdiction in New Hampshire. *See Sawtelle*, 70 F.3d 1391-92. The legal services were performed by defendants outside New Hampshire and defendants' contacts with New Hampshire "were limited to communicating with the clients in their home state." *Id.* at 1391. The court reasoned that, "[t]he mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not

confer personal jurisdiction over the non-resident in the forum state; more is required." *Id.* at 1392. Because "the defendant-attorneys' only connection with New Hampshire was the Sawtelles' residence there," New Hampshire courts could not properly exercise personal jurisdiction over them. *Id.* Here, Lucor's only connection with Rhode Island is the unexpected and unilateral move by Spectrum to the state after formation of the Agreement and Lucor's subsequent communications with Spectrum there.

b. *Lucor did not foresee that Rhode Island courts would exercise personal jurisdiction over it.*

"The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant has established a continuing obligation between itself and the forum state." *Sawtelle*, 70 F.3d at 1393. A defendant's conduct toward the forum state must be such that it can reasonably anticipate being haled into court there. *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994). Here, there is no indication that Lucor should have foreseen that it would eventually be required to defend an action in Rhode Island courts. Lucor contracted with a Delaware corporation based in New Mexico for services to be provided to it at its principal place of business in North Carolina. Lucor specifically required a provision providing that North Carolina law would apply to govern the Agreement. All meetings pursuant to the Agreement were conducted in North Carolina or Georgia, not Rhode Island. Lucor had no ongoing obligations to the State of Rhode Island at any time during the course of events underlying this action. Merely continuing to communicate with persons at Spectrum after Spectrum moved its business to Rhode Island is insufficient to put Lucor on notice that it could be haled into court there. Spectrum cannot show that Lucor foresaw at any time that it would be subject to the jurisdiction of Rhode Island courts.

3. The Court's Exercise of Jurisdiction Over Lucor Would Not Be Reasonable Under These Facts.

Although Lucor's lack of related contacts and the lack of purposeful availment are alone sufficient to defeat any assertion of personal jurisdiction, application of the reasonableness factors, which the First Circuit has termed "gestalt factors," also show that the Court's exercise of personal jurisdiction over Lucor would be unreasonable. The Supreme Court has identified five factors to be considered in weighing the fairness of subjecting non-residents to the authority of a foreign state's courts: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Sawtelle*, 70 F.3d at 1394 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

a. *Lucor's burden of appearing in Rhode Island courts is substantial.*

All of Lucor's employees, agents, and representatives with knowledge of the facts underlying this dispute are located in North Carolina. None of these people have ever traveled to Rhode Island in connection with the Agreement that is at issue in this action. Moreover, all of Lucor's documents related to this matter are maintained and located in Raleigh, North Carolina. There is no doubt that Lucor will suffer a greater burden by having to obtain local counsel in a foreign state and litigate there than it would by simply defending this action in North Carolina where it maintains its principal place of business, where its employees, agents, representatives, and documents are located, and where the contract was formed and performed.

b. *Rhode Island has a minimal interest in adjudicating this dispute.*

Here, Rhode Island had very little interest in adjudicating this action. Rhode Island law is not implicated because the Agreement at issue contains a choice of law clause that provides that North Carolina law will apply. Thus, any interest Rhode Island might have in its local courts interpreting and applying its law is non-existent. The real conduct at issue in this litigation took place outside Rhode Island. Whether and to what extent each party performed its obligations under the contract is largely based on the actions of the parties in Raleigh, North Carolina and, to a lesser extent, Atlanta, Georgia.

c. *Spectrum is able to obtain effective relief in North Carolina.*

Although it might be more convenient for Spectrum to litigate this action in Rhode Island where it maintains an office, the fact remains that Mr. Lederman traveled repeatedly to North Carolina and Georgia in connection with the facts underlying this matter. Indeed, it appears that Mr. Lederman and Spectrum had more than one North Carolina client. In contrast, none of Lucor's employees, agents, or representatives ever traveled to Rhode Island. Moreover, there is no reason to believe that Spectrum would be unable to obtain full and complete relief in a North Carolina court applying North Carolina law, as required by the Agreement.

d. *Either forum could effectively resolve the controversy.*

Effective resolution of the controversy does not weigh for or against personal jurisdiction. Lucor does not contend that this Court could not effectively manage this action and equitably interpret and apply North Carolina law to the facts, but a North Carolina court would also be able to effectively administer justice.

e. *The potential forum states both have an interest in regulating conduct within their borders, but most of the underlying conduct took place in North Carolina not Rhode Island.*

Here, both Rhode Island and North Carolina have an interest in regulating conduct within their respective borders. North Carolina, however, has a far stronger interest than Rhode Island because most of the underlying conduct took place there, rather than Rhode Island, and because North Carolina law will apply. Indeed, North Carolina is where the Agreement at issue was executed, where Spectrum directed its services to be performed pursuant to the Agreement, where many of the meetings between the parties took place, and where Lucor maintains its principal place of business. The only conduct of Lucor that even remotely took place in Rhode Island is its direction of communications to Spectrum there as a result of Spectrum's decision to move its business.

In sum, all four of the gestalt factors implicated by this action counsel against this Court's exercise of personal jurisdiction over Lucor. It would be unreasonable for Lucor to be required to appear and defend an action in a foreign state's court where its conduct related to Spectrum's claims is not closely related to the forum state, where it did not purposefully avail itself of the privilege of conducting business activities in the forum state, and where most of its witnesses and documents are located in a forum that is competent to adjudicate this matter and which has a stronger interest than Rhode Island in adjudicating this matter. For these reasons, this Court should dismiss this action because it lacks personal jurisdiction over Lucor.

## II. <u>This Court Should Dismiss The Complaint For Improper Venue Or, In The Alternative, Transfer The Action To The Eastern District of North Carolina.</u>

### A. Venue Does Not Lie in This District.

Where venue is lacking in a particular district, a court may, within its discretion, dismiss the action. *See* 28 U.S.C. § 1406(a). In the event that this Court determines that it has personal

jurisdiction over the Lucor, it should dismiss the Complaint for the independent reason that venue does not lie in this District.

The provision setting out the requirements for venue in a diversity case, 28 U.S.C. § 1391(a), provides as follows:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Because the venue statute no longer allows for venue to be based solely on the residence of the plaintiff, where the defendants do not reside in the forum district, courts will engage in an analysis as to either a "substantial part of the events or omissions giving rise to the claim" occurred. In determining whether venue is proper for a breach of contract action under section 1392(a)(2), courts consider factors such as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred. *See, e.g., PI, Inc. v. Quality Products, Inc.*, 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995); *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 1994 WL 74860 (S.D.N.Y. 1994).

As set out in the accompanying affidavits, the contract was executed in North Carolina, contained a North Carolina choice of law provisions, and was, in all material respects, to be performed in North Carolina. No meetings related to the Agreement ever took place in Rhode Island. All factors point toward North Carolina as an appropriate forum for this dispute to be heard. As the events occurring in Rhode Island were insubstantial in nature, venue is improper in this district pursuant to 28 U.S.C. § 1391(a), and the Complaint should be dismissed pursuant to 28 U.S.C. § 1406.

**B. In the Alternative, This Case Should Be Transferred to the Eastern District of North Carolina.**

In the event that the Court deems that this case should not be dismissed for lack of personal jurisdiction or improper venue, this Court should transfer this action to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

While similar to the doctrine of *forum non conveniens*, this statute gives more discretion to a district judge in determining whether to transfer a case. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981).

Although this Court has stated that defendants usually bear a heavy burden in attempting to achieve a transfer pursuant to section 1404(a), this case presents unusually compelling facts that overcome any presumption in favor of Spectrum's choice of forum. As discussed above, the Agreement was executed and performed outside of Rhode Island. Spectrum's services pursuant to the Agreement were directed to and provided to Lucor at its principal place of business in Raleigh, North Carolina, with some meetings taking place in Atlanta, Georgia. Mr. Lederman traveled on several occasions to North Carolina both to secure Lucor's business and to meet with Lucor. All of Lucor's employees who have knowledge related to the negotiation, execution, or performance of the Agreement are located in North Carolina, as are all related documents in Lucor's possession. Lucor has no reason to believe that Spectrum has any witnesses in Rhode Island other than Mr. Lederman and possibly Mr. Sands, with whom Lucor dealt.

With the exception of the deposition of Mr. Lederman, most depositions will likely take place in North Carolina or Georgia, where the witnesses are located. Due to the presence of the vast majority of witnesses and records in North Carolina, the expense of transportation and

housing of witnesses (or counsel) for purposes of depositions and/or trial would impose an unnecessary economic burden on the parties if this matter is litigated in Rhode Island. To the extent witnesses and documents are located in Georgia, North Carolina presents a closer, and therefore, more convenient forum, than Rhode Island. The more appropriate venue for an economical adjudication of this case is the United States District Court for the Eastern District of North Carolina. Accordingly, if the Court does not dismiss this action, the convenience of the parties, witnesses, judicial economy and justice would be served by the transfer of this action to the Eastern District of North Carolina.

## CONCLUSION

For these reasons, Lucor respectfully requests that this Court enter an Order dismissing the Complaint for lack of personal jurisdiction over Lucor and improper venue or, in the alternative, enter an Order transferring this action to the United States District Court for the Eastern District of North Carolina.

LUCOR, INC.,

By Its Attorneys,

/s/ Charles S. Beal

Charles S. Beal (#5559)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
401-331-5700
401-331-5787 (fax)

Date: April 9, 2007

OF COUNSEL:

Denise Smith Cline, N.C. State Bar No. 10837
S. Montaye Sigmon, N.C. State Bar No. 32827
SMITH MOORE LLP
2800 Two Hannover Square (Zip 27601)
Post Office Box 27525
Raleigh, North Carolina 27611
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

CERTIFICATION

The undersigned hereby certifies that on the 9th day of April, 2007, a copy of the foregoing was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Heather A. Pierce (#7345)
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903
401-274-9200
401-276-6611 (fax)

Steven M. Cowley
Edwards Angell Palmer & dodge, LLP
111 Huntington Avenue
Boston, MA 02199-7613
617-239-0100
617-227-4420 (fax)

/s/ Charles S. Beal

G:\csb\Lucor\RALEIGH-#330625-v2-Lucor__Memorandum_in_Support_of_Motion_to_Dismiss.DOC