IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
C.A. No. 07-075

| | |
|---|---|
| THE SPECTRUM CAPITAL GROUP, LLC<br><br>Plaintiff,<br><br>v.<br><br>LUCOR, INC.<br><br>Defendant. | **AFFIDAVIT OF STEPHEN P. CONWAY** |

NOW COMES Stephen P. Conway who, being first duly sworn, deposes and says:

1. I am a citizen and resident of Wake County, residing at 7210 Ebenezer Church, Raleigh, North Carolina.

2. I am over the age of eighteen (18) and am otherwise competent to testify to the matters set forth herein.

3. I am Chief Executive Officer for the defendant Lucor, Inc. ("Lucor"), a position that I have held since 1990.

4. As the Chief Executive Officer for Lucor, I have personal knowledge and information regarding Lucor's operations, structure, and management. In addition, I have personal knowledge and information regarding a certain agreement entered into on or about August 1, 2004, pursuant to which The Spectrum Capital Group, LLC ("Spectrum") was to provide certain financial services in connection with restructuring of Lucor's indebtedness being serviced by GMAC Commercial Mortgage ("Agreement"). I was personally involved in the negotiation and execution of the Agreement and the restructuring of Lucor's indebtedness. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

5. On or about June of 2004, Lucor learned of Michael G. Lederman ("Lederman"), Managing Principal of Spectrum, from a business contact in Raleigh, North Carolina. After an initial inquiry from Lucor, Mr. Lederman, on behalf of Spectrum, contacted Lucor to solicit Lucor's business related to certain financial services regarding restructuring Lucor's debt. Mr. Lederman subsequently traveled to Raleigh, North Carolina to meet with Lucor and to secure its business.

6. Upon information and belief, Spectrum had its principal place of business in New Mexico at the time Lucor first learned about Mr. Lederman through and until the time that Lucor entered into the Agreement with Spectrum. Indeed, upon information and belief, Spectrum did not register to conduct business in Rhode Island August 3, 2004, two days *after* the Agreement was executed. Furthermore, during the negotiation of the Agreement, the only communications that Lucor had with Spectrum were either with individuals located in its New Mexico office or via cell phone or in meetings held in Raleigh, North Carolina.

7. In connection with negotiations leading to the execution of the Agreement, Lederman, on behalf of Spectrum, sent or hand delivered an engagement letter to me at Lucor's offices in Raleigh, North Carolina.

8. Lucor entered into the Agreement with Spectrum on or about August 1, 2004 when both Mr. Lederman and I signed the Agreement in Lucor's Raleigh, North Carolina office. In particular, Lucor contracted with Spectrum for Spectrum to provide investment banking and financial advice in connection with the restructuring of certain debt services by GMAC Commercial Mortgage. These services were to be provided and directed to Lucor at its principal business location in Raleigh, North Carolina.

9. The Agreement expressly provided that it would be construed in accordance with and governed by North Carolina, not Rhode Island, law. This provision was included in the Agreement at the express request and requirement of Lucor. At no time did Lucor intend to avail itself of the privileges, benefits, and protections of Rhode Island law.

10. In connection with the Agreement, no Lucor officer, agent, or employee ever traveled to Rhode Island to conduct business, receive services or advice, or otherwise interact with Spectrum. Instead, Spectrum or its employees were required to travel to North Carolina or Georgia or on one occasion to Texas to perform services for Lucor.

11. Upon information and belief, Spectrum's business is to provide financial services wherever its client is and at the client's convenience. Mr. Lederman voluntarily made trips to North Carolina in connection with the Agreement, and his travel to North Carolina was an understood and expected part of Spectrum's performance. Indeed, all meetings related to the Agreement or the services provided under the Agreement took place in either Raleigh, North Carolina—Lucor's principal place of business—or Atlanta, Georgia, where GMAC has its offices or one trip to Texas where Shell Oil Products US is located.

12. Most communications to Spectrum in Rhode Island were at the request of or initiated by Lederman or other Spectrum employees, agents or representatives.

13. In short, Lucor neither purposefully made nor initiated any connection or contact with Rhode Island, nor did it engage in activities that led its officers or representatives to conclude that it would be subject to jurisdiction there. None of Lucor's communications with Lederman or other Spectrum employees were directed towards Lucor conducting business in Rhode Island, but instead related to Spectrum's provision of services to Lucor in North Carolina and Georgia.

14. Further, all of Lucor's records relating to the Agreement are maintained in Raleigh, North Carolina. All Lucor employees, agents, and representatives who were involved in the negotiation, execution or performance of the Agreement are located in or near Raleigh, North Carolina. It would be inconvenient for Lucor to transport all its records and witnesses to Rhode Island.

15. Upon information and belief, GMAC's employees, agents, and representatives, who were involved in the restructuring of Lucor's indebtedness are located in or near Atlanta, Georgia. Upon information and belief, none of GMAC's employees, agents, and representatives, traveled to Rhode Island in connection with the restructuring of Lucor's indebtedness.

16. Lucor only negotiated with and did business with Mr. Lederman of Spectrum or in a limited capacity with Mr. Joe Sands of Spectrum.

17. On information and belief, it would be a greater inconvenience for Lucor's and GMAC's numerous witnesses to be required to travel to Rhode Island, perhaps repeatedly, than for Mr. Lederman and GMAC's witnesses to travel to Raleigh, North Carolina, a location to which Mr. Lederman has already voluntarily traveled on a number of occasions in connection with the events underlying this action.

FURTHER THE AFFIANT SAYETH NOT.

This the 6th day of April, 2007.

Stephen P. Conway

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Sworn to and subscribed before me this day by Stephen P. Conway.

Date: April 06, 2007

Cherie L. Cunningham
Signature of Notary Public

Cherie L. Cunningham, Notary Public
Typed/Printed Name

[Official Seal]

My Commission expires: December 27, 2010



CERTIFICATION

The undersigned hereby certifies that on the 9th day of April, 2007, a copy of the foregoing was filed through the ECF system, and was served **electronically** to the following recipients identified as registered participants on the Notice of Electronic Filing (NEF):

Heather A. Pierce (#7345)
Edwards Angell Palmer & dodge, LLP
2800 Financial Plaza
Providence, RI 02903
401-274-9200
401-276-6611 (fax)

Steven M. Cowley
Edwards Angell Palmer & dodge, LLP
111 Huntington Avenue
Boston, MA 02199-7613
617-239-0100
617-227-4420 (fax)

/s/ Charles S. Beal