IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
C.A. No. 07-075

THE SPECTRUM CAPITAL GROUP, LLC

Plaintiff,

v.

LUCOR, INC.

Defendant.

**AMENDED ANSWER AND COUNTERCLAIM**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Defendant Lucor, Inc. ("Lucor"), by and through its undersigned counsel, amends its Answer and responds to the allegations in the Complaint of Plaintiff The Spectrum Capital Group, LLC ("Spectrum") as follows:

**NATURE OF THE ACTION**

1. It is admitted that the parties entered into a written Agreement. The document entitled "Agreement" speaks for itself and is the best evidence of the contents of the written Agreement. Except as specifically admitted herein, the allegations contained in paragraph 1 of the Complaint are denied.

**PARTIES, JURISDICTION, AND VENUE**

2. Lucor lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, which are therefore denied.

3. Admitted.

4. It is admitted that Lucor is a Florida corporation with its principal place of business in North Carolina. The remaining allegations contained in paragraph 4 of the Complaint state conclusions of law and do not require a response. To the extent that a response

is deemed necessary, Lucor lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4, which are therefore denied.

5. The allegations contained in paragraph 5 of the Complaint state conclusions of law and do not require a response. To the extent that a response is deemed necessary, these allegations are denied.

## FACTUAL ALLEGATIONS

6. It is admitted that the parties' Agreement speaks for itself and is the best evidence of its contents. Except as specifically admitted herein, the allegations contained in paragraph 6 of the Complaint are denied.

7. It is admitted that the parties' Agreement speaks for itself and is the best evidence of its contents. Except as specifically admitted herein, the allegations contained in paragraph 7 of the Complaint are denied.

8. It is admitted that the parties' Agreement speaks for itself and is the best evidence of its contents. Except as specifically admitted herein, the allegations contained in paragraph 8 of the Complaint are denied.

9. It is admitted that Lucor made certain monthly payments to Spectrum. Except as expressly admitted herein, the allegations contained in paragraph 9 of the Complaint are denied.

10. It is admitted that Lucor renegotiated its indebtedness serviced by GMAC Commercial Mortgage in or about January 2007. It is further admitted that the parties' Agreement speaks for itself and is the best evidence of its contents. Except as expressly admitted herein, the allegations contained in paragraph 10 of the Complaint are denied.

11. It is admitted that Lucor received an invoice from Spectrum on or about December 15, 2006 requesting payment in the amount of $750,000.00. It is admitted that Lucor

received a second invoice from Spectrum on or about February 15, 2007 requesting payment in the amount of $495,000.00. It is further admitted that the parties' Agreement speaks for itself and is the best evidence of its contents. Except as specifically admitted herein, the allegations contained in paragraph 11 of the Complaint are denied.

12. It is admitted that Lucor received an invoice from Spectrum requesting payment of a "Reorganization Fee." It is further admitted that Lucor has made certain payments to Spectrum. Except as specifically admitted herein, the allegations contained in paragraph 12 of the Complaint are denied.

13. It is admitted that the parties' Agreement speaks for itself and is the best evidence of its contents. Except as specifically admitted herein, the allegations contained in paragraph 13 of the Complaint are denied.

**COUNT I**
**(Breach of Contract)**

14. Lucor incorporates by reference its responses to paragraphs 1 through 13 of the Complaint as if fully set forth herein.

15. It is admitted that the parties' Agreement speaks for itself and is the best evidence of its contents. Except as specifically admitted herein, the allegations contained in paragraph 15 of the Complaint are denied.

16. Denied.

17. Denied.

**FIRST DEFENSE**

The Spectrum Capital Group, LLC failed to adhere to the particulars of the parties' Agreement as negotiated and/or failed to satisfy the duties or provide the services called for under the Agreement as negotiated and, therefore, is not entitled to recover the amounts sought in this lawsuit.

**SECOND DEFENSE**

The Spectrum Capital Group, LLC is not entitled to recover for its damages, if any, to the extent that it has failed to mitigate damages as required by law.

**THIRD DEFENSE**

Upon information and belief, any recovery by plaintiff The Spectrum Capital Group, LLC is precluded by its precedent breach of the parties' Agreement.

**FOURTH DEFENSE**

Upon information and belief, the parties' Agreement is invalid and unenforceable as a matter of law because, among other things, defendant Lucor, Inc. was mistaken as to the character of this Agreement and the services to be provided, due to the misrepresentations of Michael G. Lederman, acting as the agent of plaintiff The Spectrum Capital Group, LLC.

**FIFTH DEFENSE**

Upon information and belief, The Spectrum Capital Group, LLC's claims are barred in whole or in part by the doctrines of waiver, estoppel, and laches.

**SIXTH DEFENSE**

Defendant Lucor, Inc. reserves the right to assert additional affirmative defenses in the event discovery indicates they would be appropriate.

## COUNTERCLAIM

Pursuant to Rules 13(a) and 15(a) of the Federal Rules of Civil Procedure, Defendant Lucor, Inc. ("Lucor"), asserts its counterclaims against plaintiff The Spectrum Capital Group, LLC ("Spectrum"), as follows:

1. Lucor is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Raleigh, North Carolina.

2. Upon information and belief, Spectrum is a corporation organized and existing under the laws of the State of Delaware with its principal place of business currently located in Rhode Island.

3. In or about the late spring or early summer of 2004, Lucor sought to renegotiate its debt serviced by GMAC Commercial Mortgage ("GMAC") and its related agreements with Shell Oil Products US, Jiffy Lube International, Inc., General Electric Capital and Realty Income Corp.

4. In June 2004, Lucor learned of Michael G. Lederman ("Lederman"), the Managing Partner of Spectrum, from a business contact in Raleigh, North Carolina.

5. After an initial inquiry from Lucor, Lederman, on behalf of Spectrum, contacted Lucor to solicit Lucor's business related to certain financial services to be provided in connection with the restructuring Lucor's debt.

6. In conversations with Lucor, Lederman represented to Lucor that he had personal contacts with GMAC employees and their legal counsel. He represented that he had extensive knowledge of and had worked with James C. Rickard and Conrad Nelson of GMAC, among others at GMAC. He stated that he had worked extensively with attorneys at McKenna Long & Aldridge LLP, GMAC's legal counsel. Lederman stated he knew how these individuals worked

and with his "special relationship," he was certain a positive transaction could be worked out. He stated his "special relationship" with McKenna Long, GMAC's counsel, was so intimate and strong that one of the attorneys had discussed possible employment with Spectrum with Lederman and that counsel for GMAC had also spent time on Lederman's yacht. Lederman represented that Spectrum personnel had extensive experience in work-outs with lenders.

7. Lederman further represented that he had extensive experience in financial restructuring models and knew how to prepare a restructure model that GMAC would accept or, if necessary, that he knew how to prepare a court-ordered reorganization model. He said that Spectrum would review all of Lucor's financial information, develop a plan of restructure to propose to GMAC, and would assist in preparing a plan that would include all major stake holders.

8. The parties engaged in multiple negotiations relating to Lucor's engagement of Spectrum to provide financial services, including a meeting between Lederman and Stephen P. Conway ("Conway"). Lederman reiterated that Spectrum would prepare financial models, present, and negotiate terms and agreements with the stakeholders of Lucor.

9. Prior to execution of the engagement agreement, the discussions of the engagement letter centered on Lucor's desire to enter into an agreement based on an hourly fee and Lederman's desire for a retainer monthly fee and a "Success Fee." Lederman proposed a 3-month retainer with the credit of further monthly fees offset against a "Success Fee." He continually represented it as a "Success Fee."

10. At a meeting on or about August 3, 2004 in Lucor's offices between Lederman and Conway the discussion centered on how the "Success Fee" would be determined. Lederman represented that the "Success Fee" was negotiable depending upon how much contribution and

value Spectrum delivered to the ultimate restructure or reorganization. After that meeting, based on Lederman's representations, Conway believed that Spectrum would be working hourly on the Lucor project in an amount equal to the hourly fee equivalent of the monthly retainer and that the "Success Fee" would be determined by Lucor's perception of the value Spectrum delivered. Lederman said he never had problems working it out with his clients and that the amount of the "Success Fee" was always negotiable.

11. Lederman prepared a written agreement and sent it to Lucor but in the agreement, Lederman called the fee a "reorganization fee" and contrary to the discussions and oral agreement, altered the terms to provide a six-month retainer, after which there would be an offset of monthly payments against a "Reorganization Fee."

12. When the company finished its restructure, Lederman sent Lucor a bill for the entire fee of $750,000 with no offset for any payments made as monthly retainer. Only after Lucor pointed out to Lederman that his own billing practice was not in conformity to the terms of the written agreement did Spectrum produce an invoice for $495,000.

13. Based on Lederman's representations regarding his extensive contacts with GMAC, his prior experience restructuring debt for clients similar to Lucor, and his willingness to negotiate the "Success Fee," Lucor decided to engage Spectrum to provide financial services in connection with the restructuring of Lucor's debt secured by GMAC.

14. Lucor, through its Chief Executive Officer Conway, and Spectrum, through Lederman, entered into an agreement (the "Agreement"), with an effective date of August 1, 2004, whereby Spectrum agreed to act as Lucor's investment banker and financial advisor in connection with the restructuring of the GMAC debt.

15. Specifically, under the terms of the Agreement, Spectrum agreed, among other things, to assist Lucor in devising and assessing alternative financial strategies, to review and analyze Lucor's business plans and financial projections, to assist Lucor and its professionals in formulating and negotiating a plan to restructure Lucor's GMAC debt, to advise Lucor as to its debt capacity in connection with the restructuring, and to participate in negotiations in connection with transactions to refinance Lucor's GMAC debt.

16. After the Agreement was executed and the parties commenced negotiations and met with GMAC representatives regarding Lucor's debt, it became clear that Lederman did not possess the extensive relationships he had previously represented to Lucor.

17. Lucor prepared information and analysis for Spectrum to review and analyze, but Lucor found the analysis by Spectrum to be inaccurate, ineffective and unusable. Over the course of the term of this Agreement, Lucor's personnel and legal counsel rather than Spectrum did all or nearly all of the work that resulted in agreements with GMAC and the other stakeholders.

18. Although Spectrum through Lederman had falsely represented that he had a close relationship with GMAC and its counsel, at one point, Lucor was advised by GMAC that Lederman's advice and participation in the process of restructuring of Lucor's debt was not beneficial to the process. As a result of this communication and Spectrum's failure to perform under the Agreement, Lucor determined that it was no longer productive to include Spectrum in negotiations and analysis.

19. In its dealings with GMAC related to the renegotiation of Lucor's debt, Spectrum failed or was unable to provide the services Lederman had promised to Lucor.

**FIRST CLAIM FOR RELIEF**
**(Fraud in the Inducement)**

20. Lucor incorporates the allegations of paragraphs 1 through 19 by reference as if fully set forth herein.

21. Prior to the execution of the Agreement, Spectrum, by and through Lederman, made false representations regarding the extent and nature of Lederman's contacts with GMAC, Spectrum's experience and abilities, and the level of services that would be provided to Lucor if Spectrum was retained to act as Lucor's investment banker and financial advisor.

22. At the time he made these representations, Lederman knew them to be false.

23. Lederman's false representations were made with the intent to deceive Lucor and to induce Lucor to enter into the Agreement.

24. Lucor reasonably relied on Lederman's representations regarding his contacts, his experience and knowledge and the services that would be performed by Spectrum on behalf of Lucor as well as his willingness to negotiate the final amount of a "Success Fee."

25. Lucor entered into the Agreement as a result of its reliance on Lederman's false representations regarding his contacts and the services that would be performed by Spectrum on behalf of Lucor.

26. As a result of Spectrum's false representations and fraudulent conduct, Lucor is entitled to rescind and set aside the Agreement and recover all payments made to Spectrum.

**SECOND ALTERNATIVE CLAIM FOR RELIEF**
**(Breach of Contract)**

27. Lucor incorporates the allegations of paragraphs 1 through 26 by reference as if fully set forth herein.

28. Spectrum breached the Agreement with Lucor by failing to substantially perform its obligations under that Agreement.

29. As a result of Spectrum's failure to perform under the Agreement, Lucor has suffered damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Unfair and Deceptive Trade Practices)**

30. Lucor incorporates the allegations of paragraphs 1 through 29 by reference as if fully set forth herein.

31. The above-described conduct of Spectrum constitutes conduct in or affecting commerce.

32. The conduct of Spectrum in falsely representing material information regarding Lederman's contacts, experience, and expertise and the services that would be performed by Spectrum on behalf of Lucor is an unfair or deceptive trade practice within the meaning of N.C. Gen. Stat. § 75-1.1.

33. Lucor relied on the above-described misrepresentations of Spectrum and as a result was induced to enter into the Agreement with Spectrum.

34. As a direct and proximate result of the false representations of Spectrum, Lucor has been damaged in an amount to be proved at trial.

**JURY DEMAND**

WHEREFORE, defendant Lucor, Inc., respectfully prays the Court that:

1. Plaintiff have and recover nothing of defendant Lucor, Inc.;

2. Plaintiff's action be dismissed with prejudice;

3. The Agreement between the parties be declared null and void;

4. Defendant Lucor, Inc. have and recover damages in an amount to be proved at trial;

5. Any judgment entered in favor of defendant Lucor, Inc. be trebled pursuant to N.C. Gen. Stat. § 75-16;

6. Defendant Lucor, Inc. have and recover its costs and expenses, including reasonable attorneys' fees, as permitted by law; and

7. The Court award such other and further relief as it deems just and proper.

This the 6th day of July, 2007.

LUCOR, INC.,

By Its Attorneys,

/s/ Charles S. Beal

Charles S. Beal (#5559)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, RI 02903
Telephone: (401) 331-5700
Facsimile: (401) 331-5787

/s/ Denise Smith Cline

Denise Smith Cline, N.C. State Bar No. 10837
SMITH MOORE LLP
2800 Two Hannover Square (Zip 27601)
Post Office Box 27525
Raleigh, North Carolina 27611
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of July 2007, a copy of the foregoing was filed through the ECF system, and was served on the following recipients, as indicated below, identified as the registered participants on the Notice of Electronic Filing (NEF):

VIA ECF TRANSMISSION

Heather A. Pierce, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

VIA FIRST-CLASS MAIL, POSTAGE PREPAID

Steven M. Cowley, Esq.
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199-7613

/s/ Charles S. Beal

G:\csb\Lucor\amendedanswercounterclaim.doc